IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE WENTWORTH | : | CIVIL ACTION |
| v. | : | |
| JOHN TREGO, SR. | : | NO. 07-806 |

**MEMORANDUM AND ORDER**

J. William Ditter, Jr.                                                                            May 30, 2008

      The plaintiff, Bruce Wentworth, a member of the Kimberton Fire Company, filed this action against John Trego, Sr.,[1] the Chief of Liberty Fire Company, following an altercation between the two at the scene of a vehicle accident. Trego moved for summary judgment and Wentworth simultaneously filed his response and a motion to amend his complaint. For the reasons that follow, I will grant Trego's motion for summary judgment as to Wentworth's claim for intentional infliction of emotional distress and the violation of his civil rights, I will refuse Wentworth's motion to amend his complaint to add a claim for a violation of his rights under the Fourth Amendment, and I will allow Wentworth to amend the claim labeled "assault."

FACTS

      Because this is a motion for summary judgment, I view all facts in the light most favorable to Wentworth.

      On January 17, 2006, Wentworth appeared at the scene of a motor vehicle accident where Liberty Fire Company, a volunteer fire company under the direction of Chief Trego, was assisting crash victims. Wentworth was present simply as a citizen bystander, not in his official capacity as a fireman, and he did not render assistance. Wentworth began videotaping the

---

[1] Wentworth initially named Joseph Lorman, Jr. as a defendant. Lorman was dismissed on July 16, 2007.

Liberty firemen including Trego, his son, John Trego, Jr., and Joseph Lorman, Jr.  Chief William Demski, Chief of Police of East Vincent Township, was also present at the scene of the accident. *Wentworth Dep*. 33:20-34:24, May 31, 2007.

Wentworth alleges that Trego struck him causing him to suffer a sprained shoulder, torn rotator cuff, pain, emotional distress, and other injuries.  *Compl*. ¶ 24-25.  He described the incident in his deposition:

> I was just sitting there videotaping.  John Trego, which is the chief at the time, waved to me, I waved back.  And then he had one of his firefighters come over and told me I was – I had to move, something to do with the trucks.  And I told him no.  And then Joe Lorman came over and grabbed at my camera, pushing me and told me to leave the scene, to get out of here.  The next thing I know I was brutally hit by Chief Trego just about knocking me off my balance and by that time, Chief Demski of East Vincent interrupted it . . .  Basically, that was basically it.  I left the – we all left.  Left the scene.

*Wentworth Dep*. 33:20-34:24, May 31, 2007.

Wentworth further stated that his arm was pushed by Lorman, but never pulled or grabbed, and that Lorman "grabbed at my camera very forcefully."  He stated that he was then "hit by Johnny Trego very, very hard," and believed that Trego hit him with an open hand, not a fist, and "right at my chest area."  Trego's blow did not knock Wentworth to the ground, and he had no bruises or cuts from the altercation.  *Id.* at 35:21-37:21.[2]

---

[2] I note that the dispute between Wentworth and Trego, which Wentworth attributes to "retaliation and jealousy arising out of differences between the two [ ] fire companies" is reminiscent of the origins of volunteer fire fighting, which began in Philadelphia in 1736.  The volunteer fire companies developed fierce rivalries which resulted in fighting that went beyond scuffles to arson, shootings, and murders until Philadelphia eventually established a paid fire department in 1870.

DISCUSSION

Wentworth asserts three counts in his complaint: Count I labeled "assault" alleges an unjustified, unwarranted touching; Count II for intentional infliction of emotional distress (IIED) alleges that Trego acted to inflict fear and caused emotional distress; and Count III for civil rights violations asserts that Trego's actions in both his individual and official capacity were in violation of Wentworth's due process rights under the Fifth and Fourteenth Amendments. Wentworth further seeks to amend his complaint to add a Fourth Amendment claim to Count III and assert that Trego acted with excessive force.[3]

A. Assault Claim

Count I of Wentworth's complaint alleges an unwarranted touching, motivated by ill will and malice, without justification, and in violation of Pennsylvania criminal statutes. The tort of assault is defined as an act "'intending to cause a harmful or offensive contact . . . or an imminent apprehension of such a contact, and . . . the other is thereby put in such imminent apprehension.'" *Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559 (E.D. Pa. 1999)(quoting *Restatement (Second) of Torts* § 13 (1965)). The tort of battery occurs when a person is actually subjected to a harmful or offensive contact. *Id.*

Wentworth does not state that he was put in reasonable and immediate fear and he does not allege harmful or offensive contact – just "unwarranted" contact. Further, the record does not support a finding that Wentworth was ever put in fear of harmful contact. Wentworth stated

---

[3] Wentworth states in his complaint that he brings this action pursuant to 28 U.S.C. § 1983 and the *First, Fourth,* Fifth, and Fourteenth Amendments. *Compl.* ¶ 11. He does not cite the First and Fourth Amendments anywhere else in his complaint and he fails to provide any factual support for either claim. Wentworth does allege a Fourth Amendment claim in his motion to amend his complaint and that claim is discussed below. However, to the extent that he has asserted a First Amendment claim, that claim will be disregarded for failure to offer any factual support.

that after Lorman pushed his camera, "The next thing I know I was brutally hit by Chief Trego just about knocking me off my balance." Lorman stated in his deposition testimony, provided by the plaintiff in his brief opposing summary judgment, that he didn't see or hear Trego coming and was surprised, "like, whoa, you know, I was – I didn't know somebody was behind me."

Wentworth's failure to allege that he was ever in fear of harmful contact, and his failure to provide factual support of such fear, is fatal to his claim. However, Wentworth has alleged facts to support a battery claim. Therefore, he may amend his complaint to label Count I properly.

B.  Intentional Infliction of Emotional Distress (IIED) Claim

Wentworth asserts a claim for IIED, alleging that Trego acted intentionally, willfully, and maliciously to inflict fear upon him when Trego physically attacked him and caused him to suffer emotional distress. *Compl.* ¶¶ 44-47. His claim fails as a matter of law.

> The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an extreme and outrageous type. As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. Pennsylvania courts have been chary to declare conduct "outrageous" so as to permit recovery for intentional infliction of emotional distress and have allowed recovery only in limited circumstances where the conduct has been clearly outrageous. It has been said that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

*Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)(internal quotes and citations omitted).

At worst, Trego's actions are described by Wentworth as a "violent assault." But this description is tempered by Wentworth's deposition testimony of the event and the video footage

of the incident which he filmed and provided to the court.[4]  Even assuming Trego hit Wentworth and caused his alleged shoulder injury, no reasonable juror could find Trego's one "brutal" hit was extreme and outrageous and "so severe that no reasonable man could be expected to endure it."  *Restatement (Second) of Torts, § 46(j);  Clark v. Township of Falls*, 890 F.2d 611, 622-23 (3d Cir. 1989)(noting that Pennsylvania applies Section 46 when evaluating intentional infliction of emotional distress claims).  In fact, as shown by the video, Wentworth endured the "attack" without a single verbal expression of pain or discomfort and never ceased filming throughout the brief altercation.

Summary judgment will therefore be granted as to Count II of Wentworth's complaint.

C.  Federal Civil Rights Claims

Wentworth asserts in Count III of his complaint that Trego is individually and officially liable for acting outside of his authority in a purposeful and wanton manner, with knowledge that his conduct was wrong, in violation of Wentworth's due process rights under the Fifth and Fourteenth Amendments.  In his proposed amended complaint, Wentworth adds the Fourth Amendment to his list of alleged constitutional violations and characterizes Trego's actions as excessive force.

Trego argues that he acted reasonably and within his power as a firemen at a rescue scene,

---

[4] In *Scott v. Harris*, the Supreme Court reiterated that the facts must be viewed in the light most favorable to the plaintiff on a motion for summary judgment, but held that the Court of Appeals "should have viewed the facts in the light depicted by the videotape."  127 S.Ct. 1769, 1776 (U.S. 2007).  In *Scott*, the Court held that the plaintiff's version of events was "utterly discredited" by the video and therefore "blatantly contradicted by the record."

The Third Circuit has cited *Scott* and "relied on the videotapes, where possible, to state the facts of [the] case."  *Green v. N.J. State Police*, 246 Fed. Appx. 158, 159 n.1 (3d Cir. 2007).  Therefore, I have used the videotape to supplement Wentworth's description of the incident and find his characterization of the contact as "brutal" or "violent" because such a characterization is contradicted by the video.

and that Wentworth violated the law by interfering with an emergency rescue. Trego therefore seeks summary judgment on the basis of qualified immunity. However, "If there is no constitutional violation, there is no reason to reach the qualified immunity issue." *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005). For the reasons that follow, I find that Wentworth has failed to provide facts to support any constitutional violation and will therefore grant summary judgment in favor of Trego without addressing the question of qualified immunity.

I must first identify the specific constitutional right allegedly infringed and then determine if Wentworth's claim should be reviewed under the Fourth, Fifth, or Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 393 (1989); *Gottlieb v. Laurel Highlands School District*, 272 F.3d 168, 171 (3d Cir. 2001). Accordingly I identify three separate claims asserted by Wentworth: 1) excessive force under the Fourth Amendment; 2) excessive force under the Fifth and Fourteenth Amendments; and 3) violation of the Fifth and Fourteenth Amendments' protection of bodily integrity.

    1. Excessive Force Claim: Fourth Amendment

If I were to permit Wentworth to file his amended complaint and assert a Fourth Amendment claim, he would be required to show that Trego's alleged "violent assault" amounted to a seizure which restrained his liberty by way of physical force or a show of authority. *Graham*, 490 U.S. at 395. Wentworth does not allege that Trego detained him or restrained him in any way nor does his deposition testimony support a claim of detention. Therefore, even if Wentworth were permitted to amend his complaint at this late stage in the proceedings, following Trego's motion for summary judgment, his Fourth Amendment claim

6

would fail.  Where a claim is futile, it is within the discretion of the court to deny a motion to amend.  *Forman v. Davis*, 371 U.S. 178. 182 (1962).

### 2.  Excessive Force Claim: Fifth and Fourteenth Amendments

Although Wentworth may not bring his excessive force claim under the Fourth Amendment because he was not seized, he may still assert his excessive force claim under the substantive due process clause of the Fifth and Fourteenth Amendments.  To prove excessive force under the substantive due process clause, Wentworth must show that Trego's actions shocked the conscience.  *Gottlieb*, 272 F.3d at 172.

To determine whether a defendant's actions shock the conscience, I look to the standards applied by other courts evaluating excessive force claims under the substantive due process clause.  In doing so, I note that because the substantive due process clause applies only when there is no "explicit textual source of constitutional protection," most claims of excessive force are evaluated under "the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments."  *Graham,* 490 U.S. at 394.  Excessive force claims evaluated under the substantive due process clause are therefore limited in number and factual circumstances, primarily involving police officers who cause accidental injury to third parties during high speed chases and school officials who injure students in the course of discipline.

In this case, a firemen cloaked with police powers[5] is alleged to have assaulted a

---

[5] Wentworth has stipulated that Trego was authorized as Special Fire Police on the date at issue.  *Pl.'s Statement of Uncontested Facts*, ¶¶ 1-2. Under Pennsylvania law, special fire police have "full power to regulate traffic and keep crowds under control . . . and to exercise such other police powers as are necessary in order to faciliate and prevent interference with the work of firemen." *35 Pa. Stat. Ann. § 1201 (2007)*. "A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76 (Pa. 1994).

bystander at an emergency rescue scene. Because Trego's action was intentional and not accidental, and Trego did have authority to use discretionary force if the circumstances warranted it, I find this case most analogous to cases involving school officials, that is, defendants who intentionally caused contact even if they did not intend the specific resulting harm or did so in order to maintain or restore discipline.

Therefore, the following factors must be considered in deciding whether Trego's action shocked the conscience: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Gottlieb*, 272 F.3d at 172-73, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)(evaluating a pretrial detainee's claim of excessive force under the substantive due process clause rather than the Fourth or Eighth Amendments).

### A. Need and Amount of Force

Wentworth does not dispute that he refused repeated requests that he move back from where he was standing, which was just a few feet from an ambulance into which an accident victim was being moved. Although Trego argues that force was needed to prevent Wentworth from interfering with the emergency rescue, a reasonable jury could find that no force was required. Because this is a motion for summary judgment, Wentworth is entitled to the presumption that no force was necessary, and therefore whatever force used was excessive. *Gottlieb*, 272 F.3d at 174 ("Because we have concluded that there was no need for [Defendant] to use force at all, excessivity is simply not an issue."). However, not every act of excessive force violates the constitution.

B. Extent of the injury

In *Gottlieb*, the Third Circuit asked if there was a "*serious* injury" but never reached the issue of whether the injury supported a constitutional claim because the Court found no intent. *Id.* at 173 (emphasis added). A "serious" injury is not required to uphold a constitutional claim but does weigh in the plaintiff's favor. *See Jones v. Witinski*, 931 F. Supp. 364, 368 (M.D. Pa. 1996) (surveying cases and noting that a single slap, a repeated spanking that left a student "severely bruised," and pricking a student with a straight pin were not injuries that sustained a constitutional violation, but injuries requiring spinal surgery and permanent disabilities, a beating that required hospitalization for trauma to soft tissue, repeated blows that resulted in bleeding, a welt, and permanent scarring, and throwing a student against a wall and slapping her met the constitutional threshold).

Wentworth alleges that he suffered a sprained shoulder and a torn rotator cuff. However, Wentworth's deposition, his videotape, and his medical reports all show those injuries did not result from Trego's blow. In his medical report, a doctor notes that Wentworth stated he was "pushed from behind" and that "he was carrying a camera which was knocked out of his right arm and off of his right shoulder." A second report concludes only that Wentworth's injuries are consistent with "the camera being violently wrenched by another." *Pl. Mot. To Am. Compl., Exs. G and H*.

The video does not show that Trego made contact with the camera, but instead, the video shows that it is *Lorman* who pushed the camera. Wentworth stated in his deposition that it was Lorman who forcefully grabbed his camera. To the extent that Wentworth suffered any injuries resulting from Lorman's contact, his claim is no longer before me as Lorman has been dismissed

9

from this action.

Wentworth described the contact by Trego as a blow to his chest, most likely by an open hand, and stated that he had no cuts or bruises from the incident. In *Kurilla v. Callahan*, 68 F. Supp. 2d. 556, 564 (M.D. Pa. 1999), the court held that a punch to the chest of student which left a bruise and red marks was not a severe injury and did not support a constitutional claim of excessive force. Similarly, I find that Wentworth's alleged injuries are not severe and therefore do not support a finding that Trego's actions shock the conscience.

### C.  Good Faith or Malicious and Sadistic

Even assuming that Trego had no justification and the force used was therefore excessive, what he did will not shock the conscience unless he had a malicious and sadistic desire to cause Wentworth harm. To be malicious and sadistic, Trego's actions must be "more than a merely careless or unwise excess of zeal" and he must have intended the harm. *Id.* at 173.

"There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that [the defendant] acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002). In *Reyes*, the plaintiff alleged excessive force under the Eighth Amendment after he was punched by a corrections officer and suffered a swollen shoulder. The district court granted summary judgment for the defendant and the Third Circuit affirmed, noting that not every malevolent touch, push, or shove violates a prisoner's constitutional rights. *See also, Gottlieb,* 272 F.3d at 175 (noting that the defendant's act of pushing the plaintiff in the shoulder forcing her inches back into a door jamb might be tortious but was not a constitutional violation of excessive force under the Fourteenth Amendment); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996) ("It is

simply inconceivable that a single slap could shock the conscience.").

Although Wentworth characterizes the contact as "brutal" and "violent," he admits that the force was not enough to knock him to the ground or jar the camera from his hand. Indeed, he continued to film through the altercation and for some time after. He made no verbal indication that he was in pain or discomfort and the videotape reveals no distress at all. Trego's brief contact with Wentworth may have been tortious but it cannot be considered "a brutal and inhumane abuse of power literally shocking to the conscience." *Gottlieb*, 272 F.3d at 173.

Therefore, the facts viewed in the light most favorable to Wentworth do not support a claim of excessive force under the Fifth or Fourteenth Amendments.

<u>        3. Fifth and Fourteenth Amendment Bodily Integrity Claim</u>

In addition to asserting an excessive force claim under the substantive due process clause of the Fifth and Fourteenth Amendments, Wentworth also alleges that his substantive due process right to bodily integrity was violated. This claim must also fail.

"[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Court noted the "culpability spectrum," stating that negligence is beneath the threshold, an intent to injure is most likely a violation, and that "recklessness or gross negligence is a matter for closer calls." *Id.* at 848. Following *Lewis*, the Third Circuit has articulated three possible standards to determine if a defendant's behavior reached the level of "conscience-shocking" necessary to establish a violation of a plaintiff's bodily integrity: 1) intent to cause harm; 2) deliberate indifference; and 3) a conscious disregard of a great risk of serious harm. *See Phillips v. County*

*of Allegheny*, 2008 U.S. App. LEXIS 2513, *40 (3d Cir. Feb. 5, 2008)(citing *Sanford*, 456 F.3d at 309);[6] *Ziccardi v. Smith*, 288 F.3d 57, 66 (3d Cir. 2002)(discussing the necessary level of intent for a substantive due process claim, rejecting the phrase "gross negligence or arbitrariness that indeed shocks the conscience," and holding that a conscious disregard for a great risk of serious harm is required).

### A.  Plaintiff Need Not Show An Intent to Cause Harm

A plaintiff must show the defendant intended to cause harm where the defendant had no time to deliberate and was forced to act in a hyperpressurized environment.  In *Lewis*, the Supreme Court held that police officers involved in a high-speed chase must have an intent to harm.  523 U.S. at 854.  In *Fuentes v. Wagner*, 206 F.3d 335, 349 (3d Cir. 2000), the Third Circuit held that corrections officers addressing a near prison riot must have an intent to harm because they "could not take time to reason through various options" and were forced to "quickly respond in order to quell the disturbance."  Similarly, in *Gause v. City of Philadelphia*, the court held that police at the scene of a "near riot" must have an intent to harm where they faced a "rapidly evolving, fluid and dangerous situation."  2001 U.S. Dist. LEXIS 17428, * 7 (E.D. Pa. Sept. 27, 2001).

Here, Trego was an emergency responder at the scene of a vehicle accident, and although under pressure to act quickly, at the time of his interaction with Wentworth the accident victim

---

[6] *Phillips* is distinguished from this case because it was a state-created danger case. Here, Wentworth alleges that Trego, the state actor, directly caused him harm rather than put him in harms way.  Regardless of whether a plaintiff asserts a § 1983 claim under the substantive due process clause on a direct theory of harm or under the state created danger theory, he is required to show the defendant's conduct shocked the conscience and the Third Circuit has utilized the same three-tiered culpability spectrum in evaluating either claim.  *See e.g.*, *Sanford v. Stiles*, 456 F.3d 298, (3d Cir. 2006)(clarifying the standard of culpability by surveying a number of cases while noting that many were not state-created danger claims but were nonetheless instructive).

was already safely in the ambulance. Trego cannot be said to be under the hyperpressurized environment of an evolving riot or high-speed police pursuit and therefore the plaintiff is not required to show that Trego intented to harm him.

### B. Plaintiff Must Show More Than Deliberate Indifference

In cases where the defendant has had time to make unhurried judgments, courts have required only deliberate indifference to prove conscience shocking behavior. However, such cases tend to involve decisions made over the course of days or weeks. For example, in *Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000), the Third Circuit applied the deliberate indifference standard to a caseworker who placed a child with a foster parent who later sexually abused the child. *See also*, *A.M. v. Luzerne County*, 372 F.3d 572 (3d Cir. 2004)(holding that those responsible for the plaintiff while he was in a juvenile detention center had time to deliberate concerning his welfare). Similarly, it has been held in this district that a defendant could meet the "shocked the conscience" standard through deliberate indifference where it had months to develop a transportation plan for a disabled child who was strangled by her seat restraint. *Susavage v. Bucks County Schs. Intermediate Unit No. 22*, 2002 U.S. Dist. LEXIS 1274, * (E.D. Pa. Jan. 22, 2002).

The situation in this case is not analogous to a caseworker making a calm, timely deliberation over his charge, but instead took place at the scene of an emergency rescue. Trego therefore lacked the advantage of making an unhurried decision and must have acted with more than deliberate indifference if plaintiff is to succeed.

### C. Plaintiff Must Show A Conscious Disregard of A Great Risk of Serious Harm

In *Ziccardi*, the plaintiff alleged a violation of his substantive due process rights after he

was lifted by paramedics following a fall and was rendered a quadriplegic. 288 F.3d at 60. The Third Circuit concluded that where the defendant is required to act in a matter of hours or minutes, the appropriate standard is to require proof that the defendant consciously disregarded a great risk of serious harm. *Id.* at 65.

Wentworth has failed to provide any facts that would support a finding that Trego knowingly subjected him to a great risk of serious harm sufficient to reach the conscience shocking level. Instead, two firemen asked Wentworth to move back from the site of a vehicle collision while the firemen were tending to the accident victims. When Wentworth refused, Trego "violently" and "brutally" shoved him, yet he remained standing, continued to film, made no verbal indication of pain or discomfort, and suffered no bruises or cuts from the altercation. He was therefore never subjected to a great risk of serious harm.

It follows that summary judgment must be granted as to Count III and plaintiff's motion to amend his complaint to add a Fourth Amendment violation will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE WENTWORTH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN TREGO, SR. | : | NO. 07-806 |

**ORDER**

AND NOW, this 30th day of May, 2008, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend his complaint (Dkt. # 22) to add an excessive force claim under the Fourth Amendment is DENIED.

2. Defendant's Motion for Summary Judgment (Dkt. # 19) is GRANTED as to Count I UNLESS plaintiff amends Count I on or before June 18, 2008 to label the claim as one for battery.[7]

3. Defendant's Motion for Summary Judgment (Dkt. # 19) is GRANTED as to Counts II and III.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.

---

[7] Under 28 U.S.C. § 1367(c)(3) I may dismiss the state claim where I have dismissed all claims over which this court had original jurisdiction. The statute of limitations on such a claim is tolled while the claim is pending and for thirty days after it is dismissed unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d).